Section (E) provides coverage, in pertinent part, for:

> Loss resulting directly from the Insured having, in good faith for its own account or for the account of others (1) acquired, sold or delivered, or given value, extended credit or assumed liability, on the faith of, or otherwise, acted upon any original ... (e) Evidence of debt ... which (i) bears a signature of any maker ... which is a forgery.

They contend "negligence" and "reasonable commercial good faith" are synonymous under Missouri law. Therefore, negligent actions imputable to the Bank bar Transamerica's liability and hence any basis for subrogation.

This theory is predicated on a misconstruction of the term "good faith" as used in section (E) which is inconsistent with the plain language of the Bond considered as a whole. This is manifest from all that has been said previously concerning the risks insured. *See generally Martin v. Yeoham,* 419 S.W.2d 937, 944–45 (Mo.App.1967); *see also* 13 *Couch on Insurance* 2d, *supra* at § 46:51, pp. 54, 55 n. 6.

For all of the foregoing reasons, the motion of third-party defendants to dismiss will be denied. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957).

By their supplementary memoranda both the Bank and the Bank officers seek bifurcation. Transamerica opposes such a severance claiming the issues of its defense in the main action are thoroughly intertwined with its claims against Deibel and Schwering. Rule 42(b) of the Federal Rules of Civil Procedure provides, "The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim ... or third-party claim."

█ The Court finds that considerations including convenience, clarity, and the avoidance of confusion and prejudice favor separate trials of the respective claims in this proceeding and outweigh the immedi-

ate and superficial economies which might be achieved by conduct of a single trial. *See Kosters v. The Seven-Up Company,* 595 F.2d 347, 356 (6th Cir.1979). The request for bifurcation will be granted.

**Earletta HARTWELL, Francine Beard, and all other similarly situated, Plaintiffs,**

v.

**COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF PUBLIC WELFARE ALLEGHENY COUNTY BOARD OF ASSISTANCE, Defendant.**

**Civ. A. No. 82–2178.**

United States District Court, W.D. Pennsylvania.

March 17, 1983.

Arnold H. Cantor, Pittsburgh, Pa., for plaintiffs.

Marlene W. Jackson, Deputy Atty. Gen., Pittsburgh, Pa., for defendant.

## MEMORANDUM OPINION

ROSENBERG, District Judge.

This matter is before me on a Motion to Dismiss filed by the Commonwealth of Pennsylvania, the defendant in this case.

The named plaintiffs, Earletta Hartwell and Francine Beard, are two black female employees of the defendant, who claim discrimination on the basis of their sex and race under the Civil Rights Act of 1964, Title VII, 42 U.S.C. § 2000e et seq. and the Civil Rights Act of 1866, 42 U.S.C. § 1981. The plaintiffs seek to represent a class of black females also discriminated against by the defendant.

The plaintiffs allege that the Department of Public Welfare, by which they are em-ployed, maintains a policy which discriminates against black females, which stems from a program called Project Hope, and which functioned from 1972 to 1978 and through which the plaintiffs were hired. The plaintiffs charge that an overwhelming majority of those hired through this program were black and female; that they were hired as Worker Program Trainees at a pay Range 20 and were probationary employees through nine months and one step-up at pay Range 22, before being classed as Income Maintenance Worker Trainees at Range 29 with twelve months probation; and that persons hired under normal civil service procedures were classed immediately at Range 29 with twelve months probation, even though they performed the same duties as Project Hope employees.

On April 10, 1980, the plaintiffs filed a charge with the Pennsylvania Human Relations Commission which in turn referred the matter to the Equal Employment Opportunity Commission (EEOC). The EEOC issued a notice of Right to Sue on July 21, 1982 on the basis that "The subject charge was filed more than 300 days of this allegedly discriminatory act." The plaintiffs seek to be put in a position they would have been in had they been hired under normal civil service procedures, because the Project Hope procedure had a discriminatory effect on black females, and also back pay, seniority, costs of suit and attorney fees.

The defendant in its motion to dismiss asserts that the plaintiffs failed to timely file their complaint with the EEOC, and that they were hired in 1973 and 1974, and Project Hope was terminated in 1978, while the complaint was filed with the EEOC in 1980, well beyond the 300 day requirement of 42 U.S.C. § 2000e–5(e). This was the reason the EEOC declined to pursue the matter and issued its right to sue letter (see letter attached to complaint dated July 21, 1982).

The plaintiffs' response is that a continuing discrimination exists because the plaintiffs are nine months behind non-Project

Hope employees in both salary and seniority.

The Supreme Court in *United Airlines v. Evans,* 431 U.S. 553, 560, 97 S.Ct. 1885, 1890, 52 L.Ed.2d 571 (1977), held that no continuing violation occurs where there is a past event of discrimination imposing itself on a current, otherwise neutral, system. This case is authority here. Cases cited by the plaintiffs are inapposite. *Wetzel v. Liberty Mutual Ins. Co.,* 508 F.2d 239, 246, C.A.3, 1975, involved a continuing discrimination in promotion against the plaintiff. *Fisher v. Dillard University,* 499 F.Supp. 525 (E.D.La., 1980), involved requests for salary raises continuing throughout the plaintiff's employment. *Jenkins v. Home Insurance Company,* 635 F.2d 310, C.A.4, 1980, concerned a case of continued employment discrimination where the condition flowed from an initial discrimination which occurred at the time of hiring; this is unlike the matter before me wherein the parties were hired through a special program, which ceased as of the time their promotions to Income Maintenance Trainees, and which program ceased altogether in 1978. No continuous discrimination is present in this situation and the defendant is entitled to have its motion to dismiss granted.

■ Even if this action was considered to be timely filed, the matter should nonetheless be dismissed since there is no discrimination present as a matter of law. The Civil Service Job Specifications for Income Maintenance Worker Trainees as of August, 1973 contained the following requirements:

> "Minimum Experience and Training: One year of experience at the level of a Clerk II in a budget or medical function, or two years of experience as a Clerk II in any other function in an income maintenance office;

> or

> Three years of experience in interviewing, investigating or work requiring the analysis and interpretation of data; or any equivalent combination or experience and training."

Persons hired through Project Hope, as admitted by both parties, were not required to have these qualifications, but rather the nine-months probationary period plus service at lower pay scales substituted for the minimum experience and training normally required. Project Hope participants were therefore given a benefit that would have been otherwise denied them because of their own inability to meet the qualifications specified under Civil Service. This does not constitute discrimination. As in *United Steelworkers of America, AFL–CIO–CLC v. Weber,* 443 U.S. 193, 203, 99 S.Ct. 2721, 2727, 61 L.Ed.2d 480 (1979), an important purpose of civil rights legislation was to open employment opportunities for black persons in occupations which have been traditionally closed to them. Project Hope and the Commonwealth's cooperation with that program falls within both the letter and the spirit of that objective. The defendant's Motion to Dismiss will be granted, and an order will be entered accordingly.