**Robert J. DAVIS, Plaintiff,**

**v.**

**UNITED STATES POSTAL SERVICE and Robert Tisch, Postmaster General of the United States, Defendants.**

**Civ. No. 83–1659.**

United States District Court, M.D. Pennsylvania.

June 11, 1987.

Robert E. Rains, Thomas M. Place, Carlisle, Pa., for plaintiff.

Frederick E. Martin, Asst. U.S. Atty., Lewisburg, Pa., Bruce Joel Jacobsohn, Sr.

Asst. Regional Labor Counsel, Philadelphia, Pa., for defendants.

MEMORANDUM AND ORDER

NEALON, Chief Judge.

Plaintiff filed this Complaint on November 17, 1983 alleging violations of the Rehabilitation Act of 1973 §§ 501 and 504, 29 U.S.C. §§ 791 and 794. Plaintiff voluntary dismissed Counts V, VI, VII and VIII of the Complaint by Stipulation dated October 15, 1986.[1] On that same date a Stipulation of Facts was submitted by the parties. *See* Document 47 of the Record. In addition, plaintiff filed a Statement of Undisputed Facts in a Preliminary Pretrial Memorandum filed on May 30, 1985. *See* Document 33 of the Record. Presently pending before the court are both parties' Motions for Summary Judgment. It is agreed by the parties that the case should be decided on the motions and that no further proceedings on the merits are necessary. All briefs having been filed, the motions are ripe for disposition. For the reasons set forth below, the court will deny plaintiff's Motion for Summary Judgment as it pertains to the claim of job reassignment; grant plaintiff's motion as it relates to the claim of disparate pay; grant defendants' Motion for Summary Judgment concerning job reassignment and deny defendants' motion relating to disparate pay.

FACTUAL BACKGROUND

Plaintiff, Robert J. Davis (Davis), claims that Defendant's, United States Postal Service (Postal Service), policy of recognizing three (3) entry level positions of employment requiring stamina, exertion and/or dexterity, bars the hiring, placement and advancement of otherwise qualified physically handicapped persons for positions that exist in the Postal Service. Document 1 of the Record—Count I. According to plaintiff, the Postal Service placed plaintiff in a hazardous and ill-suited position and then refused to modify the employment by eliminating the hazardous component or transferring plaintiff to appropriate employment. *Id.* —Count II. In Counts III and IV of the Complaint, plaintiff maintains that he improperly was paid one-half (½) the wages paid to non-handicapped persons hired the same day, performing the same work and to whom identical performance standards were applied. *Id.* —Counts III and IV. These actions are said to violate Sections 501 and 504 of the Rehabilitation Act, 29 U.S.C. §§ 791 and 794 and the Due Process and Equal Protection Clause of the Fifth Amendment.[2]

By Stipulation, the parties agreed to the vast majority of facts necessary to decide the instant matter. As stated, it is conceded that the case can be decided on the basis of the factual background presented. *See* Letter to the Court dated January 19, 1987. In light of the stipulations filed by the parties and the briefs submitted, the following factual background emerges.

Davis suffers the effects of moderate to severe hemophilia, with clotting factor VIII deficiency. Davis has chronic arthritis associated with chronic hemophilia. The Postal Service is a quasi-independent agency of the United States Government employing over 700,000 people. Of these 700,000 people, approximately 617,000 are in entry-level positions such as clerk, carrier, mail handler, vehicle operators, rural carriers and various maintenance positions. The majority of postal employees enter the

1. Count V alleged that defendants' failure to allow plaintiff additional time to practice on the MPLSM machine denied plaintiff reasonable accommodation under the Rehabilitation Act. Count VI was based on defendants' refusal to allow plaintiff to retake the MPLSM examination. Count VII contended that defendants violated the Rehabilitation Act by failing to give plaintiff seven (7) days notice of their intent to terminate his employment for failing to pass the MPLSM proficiency test. Finally, Count VIII claimed that defendants refused to allow plaintiff additional opportunities to pass the MPLSM test when other non-handicapped persons were accorded such additional opportunities.

2. Plaintiff concedes that most courts find that §§ 501 and 504 represent the exclusive grounds for asserting handicap discrimination in employment actions against the federal government. Document 51 of the Record at 21 n. 3. Plaintiff has not briefed the Fifth Amendment claim and, therefore, the court will not discuss it. *Id.*

work force based on open competitive examinations.

The severely handicapped program of the Postal Service is developed around the ability to hire casual employees within the supplemental work category who are permitted to have two (2) ninety (90) day appointments. The Postal Service, given the restrictions of the contractual definition of supplemental work force in the Agreement with the Unions, designed a handicapped program using noncompetitive hiring procedures and providing what is called a work sample, in contrast to an open competitive examination. The Pennsylvania Bureau of Vocational Rehabilitation or the Veterans Administration are used to refer individuals to the Postal Service who the state believes can perform the duties of the job that is available and, in fact, certifies that this individual should be considered for appointment. This so called special recruitment program provides that an individual perform service for a period not to exceed two (2) ninety (90) day appointments before a decision is rendered to convert to career status and become a part of the regular work force. These appointments serve as a work sample to determine the applicant's ability to perform the essential functions of the job, in contrast to an applicant who is screened for employment consideration by taking a competitive examination and waiting for hiring consideration based on his test score and register standing.

Davis received a B.S. degree from the University of Scranton in Political Science with a minor in business administration with emphasis in accounting and financial planning/policy analysis in 1979. In 1983, Davis was awarded a master's degree from Marywood College in Public Administration. Davis also was trained in an Emergency Medical Technician Program by the Pennsylvania Department of Health in 1976 and 1979. He completed a similar program offered by the New York State of Health in 1979. Davis worked as a volunteer from April 1976 until January 1982 as treasurer/auditor of the Throop Community Ambulance Association. In the summers of 1976 and 1977, he was employed as an emergency medical technical dispatcher for local government units and in the summer of 1978, he worked with a paramedic training squad in a training position providing emergency health care. Similarly, from January to June 1979, he was employed as a health care specialist, providing emergency health care for Lackawanna County. Finally, from July to October 1979 he served as a health planning analyst.

In October 1979, Davis was selected from a postal service register and hired by defendant at the Scranton Post Office as a "casual employee" to be a manual clerk. It appears that plaintiff was not hired under the plan to assist handicapped applicants. He began service with the Post Office on November 17, 1979 and voluntarily resigned on November 30, 1979 to accept other employment as a restaurant manager for P.S.I. Systems, Inc., from November 1979 until December 1980.

During the period from September 1980 to June 1982 Davis sought employment again with the Postal Service. Despite these efforts, Davis remained unemployed from December 1980 until July 1982, except for his paid internship with the Clerk of Judicial Records Office in Lackawanna County from January to July 1982.

In accordance with the Postal Reorganization Act (PRA), wages and salaries for bargaining unit employees are subject to the terms and conditions of a collective bargaining agreement as well as employee classifications. Article VII Section 1 of the Agreement between the Postal Service and the American Postal Workers Union, AFL–CIO and National Association of Letter Carriers, AFL–CIO (Agreement) provides:

ARTICLE 7

EMPLOYEE CLASSIFICATION

Section 1. Definition and Use

A. Regular Work Force. The regular work force shall be comprised of two categories of employees which are as follows:

1. Full-time. Employees in this category shall be hired pursuant to such pro-

cedures as the Employer may establish and shall be assigned to regular schedules consisting of five (5) eight (8) hour days in a service week.

2. Part-Time. Employees in this category shall be hired pursuant to such procedures as the Employer may establish and shall be assigned to regular schedules of less than forty (40) hours in a service week, or shall be available to work flexible hours as assigned by the Employer during the course of a service week.

B. Supplemental Work Force.

1. The supplemental work force shall be comprised of casual employees. Casual employees are those who may be utilized as a limited term supplemental work force, but may not be employed in lieu of full or part-time employees.

2. During the course of a service week, the Employer will make every effort to insure that qualified and available part-time flexible employees are utilized at the straight-time rate prior to assigning such work to casuals.

3. The number of casuals who may be employed in any period, other than December, shall not exceed 5% of the total number of employees covered by this Agreement.

4. Casuals are limited to two (2) ninety (90) day terms of casual employment in a calendar year. In addition to such employment, casuals may be reemployed during the Christmas period for not more than twenty-one (21) days.

In 1981, Davis took the Postal Service Examination and was placed on all open registers at the Scranton Post Office with the following scores and positions:

Mail Handler—Score 79.2—483 on Register.

Clerk-Carrier—Score 78.8—166 on Register.

MPLSM Clerk—Score 81.7—501 on Register.

Clerk Carriers must be physically able to perform efficiently the duties of the position which requires prolonged standing, walking and reaching and may also involve the handling of heavy sacks of mail. Similarly, mail handlers are required to be able to lift and shoulder seventy (70) pounds. By letter dated September 16, 1981, the Postal Service advised Davis that the position of Multiple Letter Sorting Machine (MPLSM) operator, "[i]s one which may be hazardous to you due to your handicap of having hemophilia."

In addition to being on the Scranton Post Office register, Davis was certified by the Pennsylvania Bureau of Vocational Rehabilitation as a "severely handicapped" individual. This certification allowed Davis to be eligible for hiring under the Postal Service Severely Handicapped Program. The Bureau of Vocational Rehabilitation certified Davis to be a Mail Handler, Distribution Clerk, Clerk Carrier and MPLSM operator by certification dated October 15, 1980.

On June 7, 1982, the Postal Service sent Davis a Call In Notice Form 2550, to be considered for employment as an MPLSM clerk—part-time flexible.[3] Davis reported to the Scranton Post Office for a preemployment orientation/training test on June 17, 1982. Davis took 18 hours off the clock uncompensated training on the MPLSM and was qualified on or about July 6, 1982. All prospective MPLSM operators must satisfy this requirement. A statement of understanding of hiring policy was executed by Davis on June 17, 1982.

On July 6, 1982 Davis presented himself for examination by Postal Service physician Myron H. Ball, M.D. Davis filled out Postal Service Form 2485 and provided information on his condition from the Hershey Medical Center's Hemophilia Center of Central Pennsylvania. Dr. Ball noted that Davis, "[h]as chronic arthritis associated with chronic hemophilia." Nevertheless, Dr. Ball approved Davis for work as an MPLSM clerk. Moreover, Dr. Ball certified that Davis, "[q]ualified physically under the Handicap program." Specifically,

3. This position was made available to plaintiff because he was certified as a severely handicapped individual rather than as a result of his placement on the Postal Service's open register. *See infra* at 9.

the certificate of medical examination signed by Dr. Ball found Davis, " '[m]edically suitable' to be hired as a distribution machine (MPLSM) clerk/trainee with the stated limitation: 'Certified that this man qualifies under the Handicap program. Should not lift over sixty-five pounds. If he has any problems within the trial 90 days—separate.' "

On July 6, 1982 Davis executed a "casual appointment" acknowledgement setting forth the terms of his casual employment. Davis was hired by the Postal Service under their Severely Handicapped Program. All casual employees receive identical wages and benefits. Casual appointments include those persons intended by the Postal Service to be temporary only and those persons certified under the Severely Handicapped Program whom the Postal Service will convert to career status appointments if they successfully complete their probationary period in casual status.

Davis was employed as of July 26, 1982 by the Postal Service as a casual employee at $4.76 an hour and was categorized as a casual distribution machine (MPLSM) clerk. On this same date two nonhandicapped individuals were appointed as MPLSM clerks at the Scranton Post Office to serve in the regular work force and, although doing exactly the same work as plaintiff, were paid $9.50 per hour. Plaintiff and the two (2) nonhandicapped individuals were given one hour of training on the MPLSM on most workdays followed by seven (7) hours of other duties. All three (3) individuals were allocated forty-seven (47) hours of MPLSM training, which training was performed on a training console rather than an actual working MPLSM. Among the other duties that the three (3) individuals had to perform, while not training on the MPLSM, were to load and unload heavy sacks on and off trucks.

During Davis' eighty-nine (89) day probationary period as an MPLSM operator, he applied for the advertised position of safety manager at the Postal Service's Lehigh Valley Management Services Center. This application was returned by the Postal Service with the statement that Davis was not eligible to apply for this position. Aside from the MPLSM training, Davis was a satisfactory employee of the Postal Service. That is, plaintiff performed satisfactorily according to his Probationary Period Examination Report aside from his lack of proficiency on the MPLSM.

On September 9, 1982 Davis bumped his right knee on the metal edge of a hamper and reported to the medical unit for soreness, swelling and stiffness of the knee. This injury required that Davis go on limited duty for one (1) day thereafter. Davis completed his forty-seventh (47th) hour of training on October 4, 1982. Upon completion of this training, Davis was administered a test for proficiency on the MPLSM. Although given five (5) opportunities to pass this test, Davis failed to achieve the necessary speed and accuracy. The exact same standards for speed and accuracy were applied to Davis as to the other nonhandicapped individuals who were receiving approximately double Davis' wages. On the fifth (5th) attempt to pass the test, Davis encountered trouble with cards "jamming" in the MPLSM and his request to retake the examination was denied.

On October 7, 1982 Davis was given an unsatisfactory evaluation based on the MPLSM proficiency test results. It was explained that the outgoing requirements are 98% accuracy after forty-seven (47) hours training and Davis only achieved 88% accuracy. Specifically, the form stated:

> This employee is unsatisfactory and should be separated for failure to qualify. The reasons for this recommendation are given on the reverse of this form. (*Note: An employee who is to be separated for scheme failure must be given at least seven (7) days advance notice of such intent. If the employee qualifies on the scheme within the notice period, he will not be separated for prior scheme failure.*) (emphasis in original).

Although this form notified Davis that he would be given an additional seven (7) days prior to his termination, he was given notice on October 7, 1982 by the Postal Service that his appointment would expire on

October 8, 1982, because of his failure to qualify on the outgoing scheme.[4]

Career employees have rights under Article XII, § 1A of the Agreement, which includes the right to have at least seven (7) days advance notice of an intent to separate the employee. Casual employees are not provided these rights under Article XII, § 1A by the Postal Service and, as a result, Davis did not have a termination notice period of seven (7) days during which he could have retaken the MPLSM proficiency test once per work day. By Memorandum dated October 7, 1982, Scranton Postmaster William J. Nellis stated:

> This is to advise you that your Casual appointment will expire Friday, October 8, 1982. This will be the last day you will be entitled to work.
>
> As you know, you were allotted forty-seven (47) hours to successfully qualify on the outgoing schemes, however, you failed to do so.
>
> You began your scheme training on July 27, 1982 and completed your 47th hour on Monday, October 4, 1982. You were provided the opportunity to qualify on the examination twice prior to the 47th hour and you were given three tries to pass the examination after the 47th hour. However, you failed all attempts to successfully qualify on the outgoing scheme.
>
> Therefore, I have no recourse but to terminate your Casual appointment.

Davis instituted an Equal Employment Opportunity–Affirmative Action Complaint against the Postal Service on October 8, 1982. This claim was denied on October 22, 1983. This action ensued.

During his employment with the Postal Service in 1982, Davis was protected by applicable provisions of §§ 501 and 504 of the Rehabilitation Act, 29 U.S.C. §§ 791 and 794. Davis was not medically qualified for the position of MPLSM clerk or any other entry level position within the Postal Service at the Scranton Post Office. No reasonable accommodation was possible for Davis to allow him to perform the duties of MPLSM clerk. The Postal Service does not dispute that Davis could have performed the position of window clerk, with reasonable accommodation, at the Scranton Post Office. The requirements of the collective bargaining agreement with the Union, however, mandated that this position was not available to entry level employees unless no current craft employee wished to bid for this position. This effectively barred Davis from the position. The window clerk position is a preferred duty assignment. An employee seeking said position would have to utilize the contractual bid procedures and the contract requires that the position go to the senior bidder. Separate registers and hiring registers are maintained at each individual Post Office.

Based on Davis' qualifications, the Postal Service does not dispute that Davis could have physically performed various other non-entry level positions in the Post Office in Scranton and at the Lehigh Valley Management Services Center with or without reasonable accommodation. These positions were not made available to Davis because of certain Postal Service policies requiring promotion from within where possible and certain bidding procedures. For example, when plaintiff applied for the position of Safety Manager "B" EAS–18 MSC at the Lehigh Valley Management Services Center, this position was filled pursuant to policies mandated by the PRA regarding career appointments for postal employees. If no postal applicants were qualified for the position, the Postal Service would have gone to external recruitment to secure qualified applicants including qualified handicapped. In other words, a handicapped individual whose handicap prevents him from performing any of the Postal Service's positions with or without reasonable accommodation will not be hired for a non-entry level position unless the Postal Service has been unable to hire a current qualified employee, whether handicapped or not, for that position.

## DISCUSSION

The parties agree that there are two (2) issues to be decided in this case. Although

4. Count VII of plaintiff's Complaint concerned the failure to give plaintiff seven (7) days notice. This count was voluntarily dismissed. *See supra* at 1 n. 1.

worded differently by the parties, those issues are:

A. Do the defendants' policies of hiring and/or promoting from within consistent with the Postal Reorganization Act, the internal regulations of the Postal Service and the collective bargaining agreement, but which excludes Davis from non-entry level positions for which he is qualified, illegally discriminate against Davis as a qualified handicapped person and deny him his rights to affirmative action in hiring and promotion?

B. Does the Postal Service violate the Rehabilitation Act by employing individuals hired non competitively under the Severely Handicapped Program at the rate paid to all casual employees until the successful completion of the 90–180 day probationary period rather than the rate paid to employees hired competitively when this results in the fact that Davis was paid one-half the wages paid to nonhandicapped persons hired the same date, training for the same job, doing the same work and to whom the same performance standards were applied?

The court will discuss each issue separately.

It is conceded that Davis was protected by §§ 501 and 504 of the Rehabilitation Act during his employment in 1982. Thus, both parties appear to agree that it is not necessary for the court to decide whether § 504 of the Rehabilitation Act applies to employment decisions by federal agencies. *See* Document 51 of the Record at 19 and Document 54 of the Record at 8 n. 1. That is, § 501, which undoubtedly is applicable here, places a higher standard on the Postal Service than does § 504. *See Morgan v. U.S. Postal Serv.*, 798 F.2d 1162, 1164 n. 2. (8th Cir.1986), *cert. denied*, — U.S. —, 107 S.Ct. 1608, 94 L.Ed.2d 794 (1987). Consequently, the court proceeds with the analysis pursuant to § 501.

The 1978 amendments to the Rehabilitation Act of 1973 make the Postal Service subject to the provisions of the Act prohibiting employment discrimination based on handicap. *See Bey v. Bolger*, 540 F.Supp. 910 (E.D.Pa.1982). In relevant part, § 501 provides:[5]

> Each department, agency and instrumentality (including the United States Postal Service and the Postal Rate Commission) in the executive branch shall ... submit to the Equal Employment Opportunity Commission and to the Committee an affirmative action program plan for the hiring, placement, and advancement of individuals with handicaps in such department, agency, or instrumentality.

29 U.S.C. § 791(b). It is recognized that § 501(b) places a duty to insure that handicapped individuals are afforded equal opportunity in both job assignment and promotion. *See Ryan v. Federal Deposit Ins. Corp.*, 565 F.2d 762 (D.C.Cir.1977). A private cause of action exists to enforce § 501. *See* 29 U.S.C. § 794a. Section 501 creates judicially enforceable rights to affirmative action in federal employment placement and promotion. *See Gardner v. Morris*, 752 F.2d 1271 (8th Cir.1985); *Shirey v. Devine*, 670 F.2d 1188 (D.C.Cir.1982); *Prewitt v. United States Postal Serv.*, 662 F.2d 292 (5th Cir.1981). In *Alexander v. Choate*, 469 U.S. 287, 105 S.Ct. 712, 83 L.Ed.2d 661 (1985), the United States Supreme Court restated the requirement of reasonable accommodation, rather than substantial or fundamental modification, for employment of the handicapped. *See also Fynes v. Weinberger*, — F.Supp. — No. 85–0427, slip op. (E.D.Pa. July 22, 1985) (Weiner, D.J.) (necessity for providing reasonable accommodation is derived

5. Section 504 states:

> No otherwise qualified individual with handicaps in the United States ... shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794.

Discriminatory intent is not a necessary component for plaintiff to establish a violation of § 504. *See Pushkin v. Regents of the Univ. of Colorado*, 658 F.2d 1372 (10th Cir.1981).

from the express language of § 501(b) requiring federal government to undertake affirmative action on behalf of handicapped applicants and employees). Accordingly, the first issue the court must address is whether defendants' failure to reassign plaintiff to a different job position, which plaintiff identifies as window clerk or safety manager, violates § 501 of the Rehabilitation Act.

I.

In *Ignacio v. United States Postal Serv.*, 30 M.S.P.R. 471 (Feb. 27, 1986), the Special Panel of the Merit Systems Protection Board adopted an EEOC decision [6] which held that the Postal Service was required in appropriate circumstances to consider reassignment of handicapped employees as part of "reasonable accommodation" under the Rehabilitation Act. In that decision, however, the Special Panel found that although there was room for disagreement on the merits, a reasonable basis for the EEOC's decision existed. *Id.* at 486. In so doing, the Panel noted that it was aware of applicable case law which tended to undercut the EEOC's decision. *Id.* at 487 n. 16. For the reasons that follow, the court does not find the analysis in *Ignacio* persuasive.[7]

As indicated in the factual background, the parties are in agreement that plaintiff is not qualified to perform the entry level MPLSM position because of his physical condition of hemophilia with arthritis. The only tasks which plaintiff is capable of performing would be non-entry level positions at the Scranton Post Office and elsewhere. The issue then is whether under the concept of reasonable accommodation the Postal Service is required to reassign plaintiff to a non-entry level position—a position to which he would not be entitled under the applicable collective bargaining agreement between the Postal Service and its employees.

The applicable regulation [8] defines a qualified handicapped person as one who, with or without reasonable accommodation, can perform the essential functions of the position in question without endangering the health and safety of the individual or others. 29 C.F.R. § 1613.702(f) (1986). As stated, there is agreement that plaintiff cannot perform the essential functions of an MPLSM even with reasonable accommo-

6. In *Ignacio,* plaintiff initiated a petition to review a decision of the Merit Systems Protection Board (MSPB) with the EEOC. EEOC found the MSPB's decision to be an incorrect interpretation of the Rehabilitation Act and held that reasonable accommodation may include reassignment to another position in the agency *where appropriate. Ignacio v. United States Postal Serv., supra,* at 475 (emphasis added). The case was referred to the MSPB for further consideration. On referal, the MSPB reaffirmed its prior decision finding that EEOC erred in requiring reassignment. *Id.* The matter was certified to the Special Panel. The Special Panel is set up to resolve disputes between the EEOC and MSPB in cases involving mixed civil service law and discrimination law. *Id.* at 476.

7. The court believes that defendants have sufficiently distinguished *Ignacio's* reliance on OPM's reference to reassignment in its *Handbook on Reasonable Accommodation.* The reference in the OPM Handbook occurred in the context of disability retirement and OPM specifically stated that the Handbook's binding guidance on the question of reasonable accommodation is only with respect to its application in the realm of disability retirement law. Thus, OPM has explained its reference to job reassignment as applying to a disability retirement situation and not situations concerning handicapped individuals. *See Bey v. Bolger,* 540 F.Supp. 910 (E.D.Pa.1982). Even if the court were to consider the OPM's Handbook, relied on in *Ignacio,* to support plaintiff's position, this reference in the manual may not be binding. *See infra* at 28. Moreover, the Special Panel's opinion does not explain the "appropriate circumstances" which require reassignment as a means of reasonable accommodation.

8. The regulations *infra* are set forth in Subpart G of Part 1613 entitled Equal Employment Opportunity in the Federal Government. Subpart G is entitled Prohibition Against Discrimination Because of A Physical or Mental Handicap. As authority for this subpart, 29 U.S.C. § 791 is relied on in part. The purpose and applicability of subpart G is as follows:

> (a) *Purpose.* This subpart sets forth the policy under which an agency shall establish a continuing program to assure nondiscrimination on account of physical or mental handicap....
> (b) *Applicability*....
> (2) This subpart applies to the U.S. Postal Service and the Postal Rate Commission.

29 C.F.R. §§ 1613.701(a) and 1613.701(b) (1986).

dation. Moreover, it is conceded that plaintiff cannot perform the essential functions of any of the entry level positions available to him with reasonable accommodation. In defining reasonable accommodation, the applicable regulations go on to provide:

> Reasonable accommodation may include, but shall not be limited to: (1) Making facilities readily accessible to and usable by handicapped persons, and (2) job restructuring, part-time or modified work schedules, acquisition or modification of equipment or devices, appropriate adjustment or modification of examinations, the provision of readers and interpreters, and other similar actions.

29 C.F.R. § 1613.704(b) (1986).

Although finding that plaintiff was neither handicapped nor perceived to be handicapped, the court in *Alderson v. Postmaster General of the United States,* 598 F.Supp. 49 (W.D.Okla.1984), found that plaintiff would not be entitled, as an accommodation, to be assigned to a different job. *Id.* at 55. The court recognized that no authority indicating such an entitlement was cited and, although the regulation refers to "job restructuring", there is nothing in the regulation which requires assignment to a different job. *Id.* As the court stated:

> The quoted regulation clearly refers to making the particular job, not another job for which the handicapped person was not hired, accessible to handicapped persons. In fact, the primary relief which the Plaintiff desires to obtain by way of this lawsuit appears to be getting another job within the Postal Service, not reinstatement to the physically demanding job of letter carrier.

*Id. Accord Jasany v. United States Postal Serv.,* 33 F.E.P. Cases 1115 (N.D.Ohio 1983), *aff'd on other grounds,* 755 F.2d 1244 (6th Cir.1985) (accommodation requirement of Rehabilitation Act refers to adjustments in position for which handicapped individual is hired; accommodation does not include requirement that employer create new position or that other employees perform handicapped individual's duties). Recently, the United States Supreme Court, in a footnote, recognized:

> Employers have an affirmative obligation to make a reasonable accommodation for a handicapped employee. *Although they are not required to find another job for an employee who is not qualified for the job he or she was doing, they cannot deny an employee alternative employment opportunities reasonably available under the employer's existing policies. See* n. 17, *supra;* 45 C.F.R. § 84.12 and App. A, pp. 315–316 (1985).

*School Bd. of Nassau County v. Arline,* — U.S. —, 107 S.Ct. 1123, 1131 n. 19, 94 L.Ed.2d 307 (1987) (emphasis added). This court finds the above mentioned rationale controlling. Consequently, reassignment to a different position is not required in this case because the collective bargaining agreement and the Postal Service's regulations do not make the non-entry level positions which plaintiff seeks reasonably available to him. In fact, these positions are unavailable to all entry level workers unless no employee secures the position through the contractually required bidding process.

In *Carty v. Carlin,* 623 F.Supp. 1181 (D.Md.1985), the court was confronted with the issue of whether the Rehabilitation Act requires an employer to reassign a handicapped individual as a reasonable accommodation. *Id.* at 1188. In *Carty,* the plaintiff asserted that even if he was unable to perform the job of laborer/custodian under any circumstances due to his handicap, he could have performed the duties of a distribution clerk and, therefore, was entitled to reassignment as a reasonable accommodation. *Id.* While recognizing that the methods of accommodation listed in the regulation are not exclusive, the court found that there are no cases which hold that reassignment is required. *Id.* The *Carty* court held:

> Examination of the regulation lends to the ultimate conclusion that the duty to reasonably accommodate only contemplates accommodation of a qualified handicapped employee's present position. It does not include a requirement to reas-

sign or transfer an employee to another position. Preferential reassignment for handicapped employees was not intended by the Rehabilitation Act. The Rehabilitation Act and its accompanying regulations indicate that the law requires reasonable workplace modification or accommodation in order to allow the handicapped person to remain in that position. There is nothing in the law or accompanying regulations to suggest that reasonable accommodation requires an agency to reassign an employee to another position. The Supreme Court has cautioned against infringing the rights of innocent employees when fashioning Title VII remedies. (citations omitted). If the plaintiff were automatically reassigned to another department, this could eliminate his need to compete with other qualified employees. Such a reassignment might also violate other employees' rights secured by the collective bargaining agreement between the Postal Service and the unions.

*Id.* at 1188–89.

In this case, accepting plaintiff's position would require that plaintiff be accorded preferential treatment over other employees who must competitively bid for the positions which plaintiff seeks to attain. There is no argument that the non-entry level positions for which plaintiff seeks employment are not available to other entry level employees. In *Burks v. Tennessee Valley Auth.*, 805 F.2d 1033 (6th Cir.1986) (Table Opinion at 805 F.2d 1033–Not Recommended For Full Text Publication), it was not disputed that plaintiff could no longer perform the tasks of his former job and the complaint was based on the TVA's refusal to employ plaintiff, "at a job of whatever I am physically able to do." The plaintiff in *Burks* argued that his remedy was broader than that afforded by § 504, since § 501(b) imposed upon the federal agency a duty to pursue affirmative action to meet the special needs of handicapped individuals. The Sixth Circuit Court of Appeals stated:

In an excellent analysis, the District Court correctly concluded that making reasonable accommodation to a handicap, under Section 501, does not require the elimination of essential functions of a job and that, since Burks (plaintiff) could not perform essential duties of a boilermaker, TVA was under no duty to accommodate him in that job. The District Court also correctly noted that the element of a plaintiff's prima facie case, that he be a 'qualified handicapped person,' which we discussed in an appeal involving an action brought under Section 504 (citation omitted), is equally applicable in Section 501 actions. Because he could not perform the essential functions of the position, even with reasonable accommodation, Burks could not demonstrate that he was a 'qualified handicapped person.'

In addition, the District Court rejected Burks' argument that an agency must, in effect, hire an applicant, solely because he is handicapped and then tailor a job to his needs, since Section 501 imposes upon federal agencies the duty to engage in affirmative action in making reasonable accommodation for the handicapped. Nothing in Section 501, or in the regulations promulgated pursuant to Section 501 and relied upon by Burks, supports that argument. Accordingly, we agree with the District Court that TVA's obligation under the circumstances of this case was limited to the specific position for which Burks applied and was rejected.

*Id. See also Hoffman v. United States Army,* No. 85 C. 6045, slip op. (N.D.Ill. Mar. 24, 1987) [Available on WESTLAW, 1987 WL 8616] (court treated plaintiff's allegations as claim brought under § 501 of Rehabilitation Act as opposed to claims under § 504 since suggestion was that § 501 is exclusive remedy for discrimination in employment by federal agency). In *Hoffman,* the pivotal question addressed was whether the phrase "position in question" is limited to the then present position occupied by plaintiff or whether it may include all positions to which plaintiff may be reassigned. The court in *Hoffman* cited several districts that have held that "position in question" does not refer to other possible positions within the federal agency based

on a reasoned examination of the language of the regulation. *See also Trimble v. Carlin,* 633 F.Supp. 367 (E.D.Pa.1986) (defendant's argument that plaintiff was seeking a different position as a means of reasonable accommodation was unsupported; instead, plaintiff argued that defendant never considered whether it could make reasonable accommodation for "position in question").

As the footnote by the Supreme Court in *Arline* suggests, although the employer is not required to find another job for an employee who is not qualified for the job he was doing, the employer cannot deny the employee alternative employment opportunities reasonably available under the employer's existing policies. Accordingly, the court must determine whether the Postal Service has denied plaintiff alternative employment opportunities "reasonably available under the employer's existing policies." In this case, rather than indicating a policy whereby employment alternatives would be available to plaintiff, the record discloses that the bargaining agreement and the Postal Service's own regulations prohibit one in plaintiff's position from obtaining the non-entry level positions plaintiff is seeking.

There is no dispute that the collective bargaining agreement between the Postal Service and its employees obligates the Postal Service to fill positions of non-entry level on the basis of seniority through a bid system. The Rehabilitation Act does not require job reassignment in this case inasmuch as the collective bargaining agreement specifically negates any policy making the positions of window clerk or saftety manager available to plaintiff. In this respect, the collective bargaining agreement is not superseded by the Rehabilitation Act.[9] *Accord Dexler v. Tisch,* 660 F.Supp. 1418 (D.Conn.1987) (while collective bargaining agreement cannot override federal law regarding employment of the handicapped, agreements' provisions are factors to consider in analyzing reasonableness of a proposed accommodation). Additionally, the PRA provides that the Postal Service place particular emphasis on opportunity for career advancement of its own employees and the achievement of a worthwhile and satisfying career. 39 U.S.C. § 101(c). The Postal Service is obligated to provide career opportunities to assure the attraction and retention of qualified and capable supervisory and other management personnel. 39 U.S.C. § 1004(a). It is undisputed in this case that the non-entry level positions would be available to plaintiff as well as any other outside applicant once the Postal Service has met its obligations under the PRA and collective bargaining agreement. If no qualified Postal Service employees secure the positions through the bidding process, plaintiff could compete for the position. While plaintiff would phrase the question as whether a federal agency may preclude handicapped individuals from obtaining jobs for which they are qualified by requiring them first to succeed in jobs for which they are not qualified, the court believes that plaintiff is requesting not an accommodation, but a complete change from the job for which he was hired.

Plaintiff argues that under § 501 the Postal Service has a duty to provide handicapped persons with affirmative action in hiring, placement and promotion. Plaintiff emphasizes the reference to placement and argues that the only meaningful way to provide affirmative action for these handicapped individuals is for defendant to make the non-arduous, non-entry level positions immediately available to them. The court does not agree. As in *Hoffman v. United*

9. In line with the Supreme Court's footnote in *Arline* and the holdings of other courts, the Rehabilitation Act by itself does not require job reassignment as a means of accommodation. The court must determine if the Postal Service has denied Davis alternative employment opportunities reasonably available under the Postal Service's existing policies. As set forth, the Agreement and the PRA negate any such policy. Accordingly, it is unnecessary for the court to decide if the seniority provisions of the Agreement prevail over the Rehabilitation Act. *Compare Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974) *with Daubert v. United States Postal Serv.,* 733 F.2d 1367 (10th Cir.1984); *Skillern v. Bolger,* 725 F.2d 1121 (7th Cir.), *cert. denied,* 469 U.S. 835, 105 S.Ct. 129, 83 L.Ed.2d 70 (1984); *Hurst v. United States Postal Serv.,* 653 F.Supp. 259 (N.D.Ga. 1986).

*States Army, supra,* where the court cited the footnote in *Arline,* the court finds that even if the applicable language is interpreted to mean that the "position in question" includes those positions to which plaintiff is entitled to be reassigned pursuant to some specific policy directive of the employer, plaintiff has not established that the Postal Service maintains any such policy. *See School Bd. of Nassau Co. v. Arline, supra.* Therefore, under either interpretation of the phrase "position in question," plaintiff fails to establish that he is entitled to recover under the Act.

In the footnote in *Arline,* the United States Supreme Court referred to 45 C.F.R. § 84.12 Appendix A. The current version of the notes referred to provides:

> Section 84.12 requires a recipient to make reasonable accommodation to the known physical or mental limitations of a handicapped applicant or employee unless the recipient can demonstrate that the accommodation would impose an undue hardship on the operation of its program. Where a handicapped person is not qualified *to perform a particular job,* where reasonable accommodation does not overcome the effects of a person's handicap, or where reasonable accommodation causes undue hardship to the employer, failure to hire or promote the handicapped person will not be considered discrimination.

45 C.F.R. § 84.12 Appendix A at 330–31 (1986) (emphasis added). Plaintiff relies on the Eleventh Circuit's statement in *Arline v. School Bd. of Nassau County,* 772 F.2d 759 (11th Cir.1985), that the district court should determine whether, "[i]t was possible to make some reasonable accommodation for her (plaintiff) in that teaching position, in another position teaching less susceptible individuals, *or in some other kind of position in the school system.*" *Id.* at 765 (emphasis added) (footnote omitted). This statement, however, must be read in light of the Supreme Court's footnote in affirming the Court of Appeals and in light of the particular factual background of the *Arline* case.

The Court of Appeals in *Arline* specifically acknowledged that, "[t]he district court found that the school board had a policy which permitted an individual to work out of field or out of certification for a period of time while he was attempting to obtain certification in that field." *Id.* at 761 n. 4. Thus, it may be said that defendant in *Arline* had a policy under which other positions were reasonably available to plaintiff. Moreover, the contractual aspects of this case relating to seniority and preferred non-entry level jobs were not present in *Arline. See Crane v. Lewis,* 551 F.Supp. 27 (D.D.C.1982).

In sum, given defendants' contractual arrangements with employees *via* the collective bargaining agreement and the Postal Service's own regulations, there is no policy of the defendants under which plaintiff could avail himself to be entitled to the reassignment he seeks. Moreover, the Rehabilitation Act, be it § 504 or § 501, does not mandate that an otherwise unqualified handicapped individual for a particular position be considered for a position not otherwise available. *See Dancy v. Kline,* 639 F.Supp. 1076 (N.D.Ill.1986) (definition of "postion in question" as set forth by EEOC in *Ignacio* is problematic; court did not agree with EEOC's definition of position in question as that including any position which the complainant could have held as a reasonable accommodation and not only the position held by the complainant).[10] As the court in *Dancy* stated:

> The language of the regulation suggesting that the phrase 'position in question' refers to the position which is the subject of the lawsuit, or 'in question.' The inquiry under the regulation should be whether with reasonable accommodation a plaintiff can do the position to which he was denied as a result of an adverse employment decision. For example, if the case involves a termination, the 'position in question' would be the job from which plaintiff was discharged. If the case involves a denial of promotion, the 'position in question' would be the position to which the plaintiff seeks to be

10. In a later opinion in the same case, the court recognized that its decision was rendered considering the heightened obligations § 501 places on federal agencies. *Dancy v. Kline,* No. 84 C 7369, slip op. (N.D.Ill. Mar. 23, 1987). [Available on WESTLAW, 1987 WL 8600].

promoted. If the case involves a refusal to hire, the 'position in question' would be the position to which the plaintiff has applied.

*Id.* at 1079. Moreover, the court in *Dancy* was not impressed with plaintiff's reliance on the Federal Personnel Manual. As that court noted, the manual provision provides advisory, but not compulsory guidance, and does not create specific legal rights. *Id.* In this case, the jobs Davis seeks, window clerk and safety manager, were not the "positions in question", but were positions which subsequently were determined to be ones which plaintiff desired, but were not available to him. *See Dexler v. Carlin,* 40 F.E.P. Cases 633 (D.Conn.1986). [Available on WESTLAW, 1986 WL 6476].

II.

Plaintiff maintains that the Postal Service violated his rights by paying him one half (½) the wages paid to nonhandicapped persons hired the same day, training for the same job, doing the same work and to whom the same performance standards were applied. Defendants counter that the Rehabilitation Act was not violated by paying individuals hired noncompetitively under the Severely Handicapped Program at the same rate paid to all casual employees until the successful completion of the probationary period rather than the rate paid to employees hired competitively. It is conceded that the collective bargaining agreement does not mandate that casual employees be paid approximately one half (½) that of employees hired competitively. *See* Document 51 of the Record at 30, Deposition Testimony of Carol Booher. The Postal Service acknowledges that plaintiff would be treated differently from regular work force employees for a period of ninety (90) to one hundred and eighty (180) days at which time he would have been afforded identical benefits to those employees hired through the competitive employment process. *See* Document 54 of the Record at 33–34.

As plaintiff demonstrates, he was no more temporary than the other three (3) individuals hired competitively in that all of them were subject to termination if they did not pass the MPLSM test in five (5) tries after forty-seven (47) hours of training. Moreover, plaintiff, hired through the Severely Handicapped Program, could be distinguished from other casual employees in that it is desired that handicapped individuals become career appointees. Conversely, casual appointments are intended to be temporary only. *See* Document 51 of the Record at 31. The only distinction defendants make between plaintiff and his competitively hired counterparts was that plaintiff, "[d]id not prove his ability to perform by successfully completing a written examination." Document 54 of the Record at 39. The court finds defendants' reasoning unpersuasive and holds that the payment to plaintiff of one half (½) the wages paid to other employees hired at the same time, doing the same work and to which the same employment standards applied, violated the Rehabilitation Act.

Competitive hirees are required to go through a ninety (90) to one hundred and eighty (180) day probationary period before being given permanent status. This probationary period also applies to those hired through the handicapped program. Both groups are subject to the same testing and wait the same time period before they are assured a permanent position. Defendants' bald assertion that if the court were to decide that the Postal Service improperly treated plaintiff the entire employment program for severely handicapped individuals would be in jeopardy, is insufficient to defeat plaintiff's statutory rights. *See* Decision of Equal Employment Opportunity Commission, Appeal No. 01820528 (Dec. 19, 1983) at Appendix 2 to Document 51 of the Record.[11]

Although factual distinctions exist, the District of Columbia's Court of Appeals' decisions in *Shirey v. Devine,* 670 F.2d 1188 (D.C.Cir.1982) and *Allen v. Heckler,* 780 F.2d 64 (D.C.Cir.1985) support this court's conclusion. In *Allen,* the court stated that the Government may not justify disparate treatment of the handicapped

11. Although the Postal Service contends that reconsideration of this decision has been sought, no subsequent decision has been provided to the court. Moreover, the court finds the decision of the EEOC in this regard to be persuasive.

simply because they were beneficiaries of an excepted hiring process. *Id.* at 69. As the court stated, "[g]iving unequal benefits for equal work is precisely the type of treatment the Act was designed to eliminate." *Id.* at 67. The case of *Hartwell v. Commonwealth of Pennsylvania,* 568 F.Supp. 793 (W.D.Pa.1983), recently cited by defendants, *see* Document 70 of the Record, is distinguishable. First, *Hartwell* was a Title VII rather than a Rehabilitation Act case. Secondly, Civil Service guidelines required certain qualifications for the job in question and plaintiffs admittedly were not required to have these qualifications. In this case, although being hired non-competitively, plaintiff was subjected to the same employment requirements as non-handicapped individuals in the same job.

The court finds that handicapped employees may not be paid one half (½) the wages of employees hired through the competitive process when performing the same work and being evaluated by the same standards. Handicapped individuals hired non-competitively are more akin to permanent employees hired through the competitive process rather than casual employees, whose employment is intended to be temporary. *See also Fowler v. United States,* 633 F.2d 1258 (8th Cir.1980) (decided on procedural due process and equal protection grounds). Accordingly, the court finds that defendants have violated the Rehabilitation Act in not paying plaintiff the same rate of pay as they did other employees hired to do the same work and to which the same employment standards applied.

The court will grant plaintiff ten (10) days from the date of this Memorandum and Order to specifically set forth the damages to which he believes he is entitled. Defendants will be granted seven (7) days to respond.

An appropriate Order will enter.

ORDER

NOW, this 11th day of June, 1987, in accordance with the reasoning set forth in the accompanying Memorandum, IT IS HEREBY ORDERED THAT:

(1) Defendants' Motion for Summary Judgment is granted insofar as it pertains to Counts I and II of plaintiff's Complaint.

(2) Plaintiff's Motion for Summary Judgment is denied insofar as it pertains to Counts I and II of his Complaint.

(3) Judgment is rendered in favor of defendants and against plaintiff on Counts I and II of plaintiff's Complaint.

(4) Defendants' Motion for Summary Judgment is denied insofar as it relates to Counts III and IV of plaintiff's Complaint.

(5) Plaintiff's Motion for Summary Judgment is granted insofar as it relates to Counts III and IV of plaintiff's Complaint.

(6) Judgment is rendered in favor of plaintiff and against defendants on Counts III and IV of plaintiff's Complaint.

(7) Plaintiff file a Memorandum concerning the damages to which he believes he is entitled within ten (10) days.

(8) Defendants respond to plaintiff's filing within seven (7) days.