**Thomas E. ROSIAK, Plaintiff,**

v.

**U.S. DEPARTMENT OF THE ARMY, Defendant.**

**Civ. No. 86–1073.**

United States District Court, M.D. Pennsylvania.

Aug. 28, 1987.

Joseph M. Blazosek, West Pittston, Pa., for plaintiff.

U.S. Dept. of Army, Major Gilbert G. Spencer, Jr., Office of the Judge Advocate General, Dept. of the Army, Washington, D.C., James A. Gibbons, Asst. U.S. Atty., Scranton, Pa., for defendant.

## MEMORANDUM AND ORDER

CONABOY, District Judge.

### I. *Procedural History*

Plaintiff, Thomas Rosiak, filed the above-captioned matter for reinstatement of employment at Tobyhanna Army Depot (Tobyhanna) and damages due under the Rehabilitation Act of 1973, 29 U.S.C. §§ 791 and 794, alleging that the United States Department of the Army improperly terminated his employment based on his physical handicap.

By way of background, the record reveals that Plaintiff Rosiak began civilian employment at Tobyhanna on or about June 16, 1981. Around October, 1984, Rosiak began experiencing health related problems in his capacity of a carpentry worker following an increased exposure to contact cement.

On July 26, 1985, Plaintiff Rosiak received a removal notice from the Department of the Army which stated that Mr. Rosiak was unable to perform the duties related to his position as carpentry worker, W6–07, and he was being removed from that position. By letter dated August 29, 1985 Plaintiff Rosiak was removed from his position at Tobyhanna effective September 6, 1985. Thereafter, Mr. Rosiak appealed his removal to the Merit Systems Protection Board ("MSPB"). Hearings were held on the appeal and on January 7, 1986, Frederick L. Fishman, Presiding Official, affirmed the Agency's action. On February 24, 1986, Rosiak filed a petition for review of this determination to the full MSPB. By opinion and order dated July 1, 1986, 31 M.S.P.R. 140, the MSPB affirmed the initial decision and sustained Tobyhanna's removal of Rosiak.

Thereafter, on August 11, 1986, Rosiak filed the instant complaint seeking reinstatement of his employment at Tobyhanna and damages claiming that his removal violated the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq. Rosiak alleges that due to a work related condition which renders him unable to be exposed to hydrocarbon-type fumes he is a "handicapped individual" within the meaning of the Act (complaint at ¶ 6); that he was terminated solely by reason of that physical handicap (see complaint at ¶ 8); that he was otherwise qualified in spite of his handicap because he could perform the essential duties of a carpenter with reasonable accommodations by Tobyhanna (see Complaint ¶¶ 9 and 10); and that his removal was wrongful and without just cause (see Complaint ¶ 11). Presently before this Court is the Defendant's motion for summary judgment which has been responded to and is currently ripe for disposition.

By reason that we find the Plaintiff is not a "qualified handicapped employee" within the meaning of the Rehabilitation Act of 1973, we will grant the Defendant's motion for summary judgment.

### II. *Summary Judgment Standard*

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(b). Any doubts as to the existence of such issues must be resolved against the moving party and all inferences to be drawn from the underlying facts viewed in

the light most favorable to the party opposing the motion. *Hollinger v. Wagner Mining Equipment Corp.*, 667 F.2d 402, 405 (3d Cir.1981). The mere presence in the complaint of an allegation is not sufficient by itself to avoid summary judgment. *Sound Ship Bldg. Corp. v. Bethlehem Steel Co.*, 533 F.2d 96, 100 (3d Cir.) *cert. denied*, 429 U.S. 860, 97 S.Ct. 161, 50 L.Ed.2d 137 (1976). Where the movant relies upon affidavits, depositions or answers to interrogatories to show that there is no genuine issue of material fact, the nonmoving party, in the context of a federal discrimination case, may survive the motion only by showing sufficient evidence supporting the claimed factual dispute to require a jury or judge to resolve at trial the parties' differing version of the truth. *Jackson v. University of Pittsburgh*, 826 F.2d 230, 233 (3d Cir.1987).

### III. *Statement of Facts*

From our review of the briefs in this matter and the sworn testimony at the Merit Systems Protection Board (MSPB) hearing, it appears that the first evidence of a physical problem with Mr. Rosiak occurred on October 19, 1984 when Donald Carroll, Rosiak's immediate supervisor in charge of the carpentry section at Tobyhanna, first noticed erratic behavior by Rosiak on the job. Mr. Carroll observed Rosiak kicking his legs, dancing up and down and carrying on in a loud tone of voice. (*See* Hearing transcript, Doc. 10, Exh. 14, hereinafter referred to as "T" at 101–105). Carroll instructed Rosiak to go to the Tobyhanna health clinic and while accompanying him there Carroll asked Rosiak the nature of his problem. Mr. Rosiak responded that he could not work around contact cement (T 106).

On the next work day, October 22, 1984, Carroll observed a continuation of Rosiak's erratic behavior, which he testified was "intolerable" for a person working in the carpentry section, and which caused him to refer Rosiak to the health clinic again (T 111). Rosiak told the clinic staff he was on medication, and had difficulty breathing with the mask he had to wear at work. Nevertheless, Mr. Rosiak refused to sign a medical release form at that time (T 39, 251–252).

On October 23, 1984, Carroll observed that Rosiak was unruly, uncooperative, unproductive and continued not to complete projects assigned to him (T 112). Rosiak appeared at the health clinic on that date and was observed to be engaging in the same erratic behavior as before, which he said was caused by the contact cement he was working with (T 40).

On October 25, 1984, Rosiak complained to Carroll of being dizzy and having pains in his chest (T 112), and was taken to the health clinic and from there, to the Mercy Hospital in Scranton, Pennsylvania where he was admitted and later released on October 30, 1984. Rosiak did not return to work until November 19, 1984 (T 112).

When Rosiak returned to Tobyhanna on November 19, 1984, he advised Mr. Carroll that he could not be around dust or fumes. Accordingly, Mr. Carroll referred him to the health clinic for a determination as to whether he was fit for duty (T 113). At the clinic, Rosiak submitted a note to the clinic staff from his personal physician, Richard E. Colarusso, which stated that he be carried on light duty for two weeks and have "no exposure to fumes or dust under any circumstances". (Doc. 10, Exh. 1). Although the clinic staff received no diagnosis from Dr. Colarusso as to Mr. Rosiak's condition, the health clinic responded by ordering that Rosiak should be restricted from dust and cement and from lifting over 44 pounds (T 113, and Exhibit 2.2).

In light of the above, Carroll moved Rosiak on November 19th from the main capentry shop into warehouse no. 4 with instructions to wear a respirator and to perform work that would not involve fumes or dust, yet Mr. Rosiak's erratic conduct continued and his work problems were not corrected (T 114–116). On December 4, 1984, Carroll requested Tobyhanna to reassign Rosiak because of the medical restriction that he not be exposed to fumes or dust: a restriction which could not be accommodated in carpentry section work.

In light of that request, John Petriello, the Tobyhanna personnel handicapped coordinator, reviewed Rosiak's case between December, 1984 and February, 1985 to determine whether Mr. Rosiak's medical work limitation (no exposure to dust or fumes) could be accommodated (T 17–21). Petriello considered reassigning Rosiak to other positions, but could identify no alternative positions that Rosiak could perform due to his physical limitation and the fact that this 9th grade education made him ineligible for many positions (T 21). On February 14, 1985, Petriello referred Rosiak's case for disposition stating, among other things:

"All placement efforts have been exhausted including consideration of job redesign. A continuous review of all vacant positions have been made during the past several months without success. At the present time there are no appropriate vacancies commensurate with his physical capabilities (cannot be exposed to fumes or dust) for which he may be considered."

(Doc. 10, Exh. 3).

After receiving Petriello's response, Carroll issued a letter on March 5, 1985 recommending that Rosiak be removed from his employment due to his inability to perform his job (T 118–121, 166). On March 6, 1986 supervisor Rubin advised Rosiak of the removal proposal. Rubin asked Rosiak several times if there were other types of work Rosiak could perform, and Rosiak replied "no". Rubin then asked Rosiak to consult with his doctor and have the doctor advise Tobyhanna what Rosiak could do that would not affect his health (T 169). Thereafter, Rubin had a letter prepared from the Tobyhanna Personnel Office to Dr. Colarusso, which he supplied to Rosiak (T 169), requesting clarification as to Rosiak's physical problems, and explaining that Rosiak's current restrictions on exposure to dust and fumes made it impossible for him to perform work in the carpentry section and would necessitate finding an alternative position or separating him from Tobyhanna (Exhibit 4).

By letter dated April 18, 1985 (Exhibit 5), Dr. Colarusso supplied a medical report to Tobyhanna advising that Rosiak's medical problems arose from exposure to Scotch Grip Contact Cement in connection with his work, and that he should not be exposed to the inhalents in this product since he was highly sensitive to them. Upon receipt of that letter, Rubin met with Rosiak and discussed alternative positions, specifically as an electrician's helper, but Rosiak informed Rubin he could not do the reaching and stooping that job would require or be exposed to sodering fumes entailed in that position (T 171, 122).

Subsequently, on June 11, 1985 the Tobyhanna Personnel Office referred Rosiak for a position in the sheet metal shop but Rosiak could not pass the physical for that position (T 171, 257; and Doc. 10, Exhibit 7).

During the interim, Rosiak continued to be employed in the carpentry shop but allegedly did little work. After Rosiak was found unfit for the sheet metal job, further attempts were made to accommodate him in the carpentry section by having him wear a respirator, which Rosiak declined to do stating he could not breath while wearing it. (T 172, 174).

In early July of 1985, Rubin made arrangements to refer Rosiak to the material handling branch of Tobyhanna for work in a warehouse that might not expose Rosiak to fumes; but the supervisor of that operation returned him to the carpentry shop due to his erratic and disruptive behavior (T 173, 123).

Carroll also attempted to assign Rosiak as a carpenter helper in constructing a new office in a different building, but Rosiak complained of paint fumes (T 124).

Thereafter, Rubin and Carroll assigned Rosiak to work outdoors near the carpentry shop, however, Rosiak complained of diesel fumes from passing trucks and tar fumes resulting from tar application on the roof of a nearby building (T 174, 125–126). Carroll also attempted to accommodate Rosiak inside the carpentry shop by spreading mineral oil on the floor, opening windows and doors and operating a fan to minimize dust and fumes; but Rosiak said the fumes coming from the concrete were

too great for him to work (T 127). Rosiak also informed Carroll he could not work over his head (e.g. installing ceiling tiles) or lift heavy weights, which required Carroll to have other employees carry objects to and for him, such as cabinets (T 127).

On July 16, 1985, Carroll referred Rosiak to the Tobyhanna health clinic, and the clinic instructed Rosiak to have his doctor complete a medical evaluation form before the clinic examined him (Exhibit 8); and Rosiak returned this form completed by Dr. Colarusso on July 22, 1985 (Exhibit 8.1; T 43, 129, 255). Dr. Colarusso stated in the form, among other things, that Rosiak had "a high degree of sensitivity to inhaled hydrocarbons or 'fumes', especially petroleum distillates, acetone and toluene); that this would "also apply to related chemical products" and that "I would suggest removing Mr. Rosiak from environmental exposure to any type of hydrocarbon products." (Doc. 10, Exh. 8.1).

Dr. Morton Spinner, the health clinic physician who examined Rosiak on many occasions, consulted with Dr. Colarusso verbally and reviewed his reports and who ultimately gave Rosiak a fitness-for-duty examination, concluded that Rosiak could not carry out his duties at Tobyhanna because any apparent exposure to fumes caused him to have adverse reactions and to revert to bizarre behavior (T 253–259).

Thereafter, the Tobyhanna Personnel Office requested Leonard Purczycki, an Industrial Hygienist at Tobyhanna who was responsible for monitoring compliance with standards for occupational safety at Tobyhanna, to review Rosiak's situation and advise whether Rosiak could be accommodated at Tobyhanna with a limitation that he work in environment free from hydrocarbon products, fumes and dust (T 55–56). Purczycki testified that he concluded hydrocarbons, fumes and dust were quite prevalent throughout the Tobyhanna's working environment due to the nature of the industrial processes performed there. Purczycki further noted that he knew of no shop or production areas that were free

from these materials and that the only areas which might not entail any exposure to such material were administrative offices or a tool crib location. Moreover, Purczycki found that respiratory protection, either by an air purifying respirator mask or by a supplied air respirator, was not any effective or feasible alternative for numerous reasons. As such, it was Mr. Purczycki's opinion as an Industrial Hygienist, there was no blue-collar operation where Rosiak could have worked at Tobyhanna free from hydrocarbons (T 57–65).

On July 24, 1985, Tobyhanna management personnel met with Mr. Rosiak and his union representative in a final attempt to ascertain from Rosiak whether there were areas where he believed he could work consistent with his medical condition (T 92). Donna Lewis, a Labor Relations Specialist, testified that she attended the meeting and that Rosiak could not identify any such areas where he felt he could work; that Rosiak further stated he could not work outside due to diesel fumes and roof tar fumes; that the union representative could not identify areas where Rosiak would work; that Rosiak stated he could not use a breath respirator because of his respiratory problems; and that air supply respirators were ruled out as being not feasible due to Rosiak's medical problems and being too costly (T 92–93).

On July 26, 1985, Carpentry Chief Carroll, with the necessary approvals, instituted proceedings to remove Rosiak and submitted a proposed letter of removal to Rosiak (T 129; Exhibit 9). Carroll's letter reviewed the entire history of Rosiak's work problems at Tobyhanna and management's unsuccessful attempts to accommodate him. Carroll concluded that he had no choice but to propose Rosiak's termination to promote the efficiency of the service since Rosiak was not able to perform productive work (see Exhibit 9 at page 3). After providing Rosiak with an opportunity to respond to the proposed action (see Exhibits 9, 10 and 11),[1] Lt. Col. Phillip Kimer-

---

1. By letter dated August 22, 1985, Mr. Rosiak responded, through his attorney, by indicating

that he would be willing to work as an electri-

er issued a final decision by letter dated August 29, 1985 (Exhibit 12), which considered Rosiak's comments and concluded that he should be removed effective September 6, 1985 and gave detailed reasons for that action. Among other things, Kimerer stated:

"In summary, you have alleged an inability to perform your job as an Carpentry Worker, and have demonstrated that inability through your inappropriate behavior which has disrupted the work place repeatedly. Tobyhanna Army Depot has attempted to accommodate you by (1) changing your work location, on at least three occasions, (2) investigating the feasibility of providing you special protection through a respirator, which you stated you could not use, (3) offering job reassignments, which you either refused or were physically unable to perform, (4) offered you repeated opportunities to articulate a reasonable accommodation, which you could not do." (Exhibit 12 at page 3).

Kimerer testified that, in addition to the reasons stated in his letter, Rosiak's behavior resulting from his medical condition caused a significant safety hazard in the highly mechanized work environment at Tobyhanna (T 189–190).

In spite of the above facts, the Plaintiff currently asserts that the Defendants failed to make a reasonable attempt to accommodate his physical disability. He supports his claim by arguing that before his problems with dust and fumes, he had worked with the Post engineers using his carpentry skills without suffering any adverse health effects. However, he argues that Tobyhanna did not properly consider him for this position when attempting to find reasonable accommodations for him. He asserts that the only reasons given for not placing him with the Post engineers was a rather dubious excuse that there was a hiring freeze in that area with no vacancies (dubious in that a co-worker was transferred there during the time in question); and that Mr. Rosiak could not be placed there because it was not a hydrocarbon free area. Plaintiff argues that the latter excuse is insufficient because his physician, Dr. Colarusso, testified at the MSPB hearing that Plaintiff need not be placed in a sterile environment, but only removed from exposure in such concentrations which produce the adverse effects. Furthermore, the Defendants never tested the Plaintiff to see exactly what level of exposure to hydrocarbons Plaintiff could be exposed to before suffering adverse symptoms.

### IV. *Analysis*

The Rehabilitation Act of 1973, codified at 29 U.S.C.S. §§ 701 et seq., was promulgated, *inter alia*, to promote employment opportunities for the handicapped in both the public and private sectors. Along with establishing a Rehabilitation Services Administration and authorizing programs for the furnishing of vocational and rehabilitative services to handicapped individuals, the Act expressly prohibits discrimination in employment.[2] Section 501, codified at 29 U.S.C. § 791, imposes on federal agencies a duty to take affirmative steps to insure that handicapped individuals have equal access to employment opportunities in the federal government. Section 504, codified at 29 U.S.C. § 794, prohibits discrimination against "otherwise qualified" handicapped individuals "solely" by reason of their handicap. In 1978, Congress extended the proscription of § 504 to activities of the federal government and created a private right of action under § 501 in favor of persons subjected to handicap discrimination by employing agencies of the federal government. *See* 29 U.S.C. § 791(a)(1).

In order to make out a case under the Rehabilitation Act of 1973, a plaintiff must prove (1) that he is a "handicapped individual" under the Act, (2) that he is "otherwise qualified" for the position sought, (3)

cian or with the Post engineers. (Doc. 10, Exh. 11).

**2.** *See* S.Rep.No. 890, 95th Cong.2d Sess. 39 (1978), U.S.Code Cong. & Admin.News 1978, p. 7312.

that he was excluded from the position sought solely by reason of his handicap, and (4) that the program or activity in question receives federal financial assistance. *Strathie v. Department of Transportation,* 716 F.2d 227 (3d Cir.1983); *Doe v. New York University,* 666 F.2d 761, 774 (2d Cir.1981). Thus, a Plaintiff who could perform the essentials of the job if afforded reasonable accommodation would be entitled to relief.

Where the Plaintiff establishes a prima facie case on the issue of being a "qualified handicapped person", the burden of proving inability to accommodate a handicapped individual has been placed upon the employer. *Nelson v. Thornburgh,* 567 F.Supp. 369 (1983) *aff'd without op.* 732 F.2d 146 (3d Cir.1983) *cert. denied* 469 U.S. 1188, 105 S.Ct. 955, 83 L.Ed.2d (1985). Once the employer presents such evidence that it could not reasonably accommodate the Plaintiff's handicap, the Plaintiff has the burden of coming forward with evidence concerning his individual capacities and suggestions for possible accommodations to rebut the employer's evidence. *Id.; see also Prewitt v. United States Postal Serv.,* 662 F.2d 292 (5th Cir.1981).

We note that the principal issue presented in this action is whether Mr. Rosiak is "otherwise qualified" to be employed in his position at Tobyhanna.

In *Southwestern Community College v. Davis,* 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed. 2d 980 (1979), the United States Supreme Court held that an "otherwise qualified" handicapped individual is one who can meet all of a program's requirements in spite of his handicap. *Id.* at 406, 99 S.Ct. at 2367. The court in *Davis* further noted that an individual may be "otherwise qualified" in some instances even though he cannot meet all of a program's requirements. This is the case when the refusal to modify an existing program to accommodate the handicapped individual would be unreasonable, and thereby discriminatory. *Id.* at 412, 99 S.Ct. at 2370; *Strathie v. Department of Transportation,* 716 F.2d at 230.

This necessity for providing reasonable accommodation is derived from the express language of § 501(b) requiring the federal government to undertake affirmative action on behalf of handicapped employees. *Treadwell v. Alexander,* 707 F.2d 473 (11th Cir.1983). One of the regulations promulgated to implement § 501, 29 C.F.R. § 1613.704, indicates the type of efforts encouraged to reasonably accommodate handicapped individuals; these include, but are not limited to:

(1) Making facilities readily accessible to and usable by handicapped persons, and (2) job restructuring, part-time and modified work schedules, acquisition or modification of equipment and devices, appropriate adjustment or modification of examinations, the provision of readers and interpreters, and other similar actions.

The regulation further sets out the factors to be considered in determining whether an accommodation would impose an undue hardship on the agency's operation. These include:

(1) The overall size of the agency's program with respect to the number of employees, number and type of facilities and size of budget; (2) the type of agency operation, including the composition and structure of the agency's work force; and (3) the nature and cost of the accommodation.

29 C.F.R. § 1613.704(c).

Additionally, it is at least notable that the Supreme Court, in a case decided under § 504 of the Act, held that two factors pertain to the reasonableness of a refusal to accommodate a handicapped individual: (1) whether accommodation would necessitate modification of the essential nature of the program; and (2) whether accommodation would place undue burdens, such as excessive costs, on the recipient of federal funds. In either of these circumstances, accommodations would be unreasonable. *See Davis,* 442 U.S. at 410, 99 S.Ct. at 2369; *Strathie,* 716 F.2d at 230.

Against this backdrop, we are compelled to conclude that any further attempts by

the Defendant to accommodate the Plaintiff's handicap would have placed an undue burden on the operations of the Tobyhanna Army Depot. We find that there can be no dispute that the Defendant made affirmative attempts, although unsuccessful, to place Mr. Rosiak in a position in which he could perform his duties in spite of his handicap. For instance, the agency attempted to restructure Plaintiff's carpentry position by transferring him outside of the main carpentry shop, providing him with a respirator, and giving him modified carpentry tasks. However, each attempt proved unrewarding as Mr. Rosiak was either unable or unwilling to have any contact with fumes or dust in his working environment. Additionally it is clear that the agencies made every reasonable attempt to reassign Mr. Rosiak to another position at Tobyhanna. Yet even when Mr. Rosiak was assigned outdoors to do cleaning work, he encountered difficult with nearby diesel fumes and roof taring fumes. As a practical matter, the dustless and fumeless working environment that Mr. Rosiak lead the agency to believe he required simply could not be provided.

With this in mind, the Plaintiff's indication (made after the proposed termination of employment) that he would be available to work in the Post engineers fails to demonstrate an alternate position to which he could have been assigned. Plaintiff's argument that he worked in the Post engineers without incident before the onset of his handicap has no rational relationship to the question of whether he could work in that position after the onset of his disability. Moreover, in its letter of removal, the agency gave a more than adequate reason why a reassignment of Mr. Rosiak to the Post engineers would not be a reasonable accommodation.

4. In your response, you raised the possibility of being reassigned to Facilities Engineering Division (formerly Post Engineers) since you have worked there in the past without incident to your health. Your work record indicates from the effective date of your employment you have been employed by the Carpenter Section. Your work in Facilities Engineering Division was only a temporary assignment and, therefore, of a short duration. Given that fact and in light of your Doctor's recent medical reports, I do not feel you can now be permanently reassigned to that area without having any adverse health effects, since you would still be exposed to hydrocarbon fumes. Furthermore, positions are not readily available in that organization because it is currently under review for possible contracting out.

(Doc. 10, Exh. 12).

We also find unpersuasive the Plaintiff's argument that the agency failed to make a reasonable attempt to accommodate him because it did not perform tests to ascertain the exact level of hydrocarbons which he could have tolerated. Given the factual history of this case, we find that no reasonable factfinder would conclude other than that such tests would be fruitless and unnecessary.

In light of the foregoing, we find that it is beyond dispute that the agency made every reasonable effort to accommodate the Plaintiff's handicap, yet were unable to do so. Mr. Rosiak, therefore, is not a "qualified handicapped employee" within the meaning of the 29 C.F.R. § 1613.702(f). Accordingly, his action under the Rehabilitation Act of 1973 must fail.

In consideration of the foregoing, the Defendant's motion for summary judgment will be granted.