John Dean TAYLOR

v.

**H. Lawrence GARRETT, III, in his capacity as Secretary of the Navy, et al.**

**Civ. No. 90–2164.**

United States District Court, E.D. Pennsylvania.

May 4, 1993.

Sharon U. Wallis, Philadelphia, PA, for plaintiff.

David Zalesne, Asst. U.S. Atty., Philadelphia, PA, for defendants.

## MEMORANDUM

LOUIS H. POLLAK, District Judge.

I have considered the defendant Secretary of the Navy's motion for partial summary judgment (doc. # 39), seeking judgment in favor of the Navy on Count I of the complaint, which asserts various claims under the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.* The motion for partial summary judgment presents a simple question, requiring a surprisingly complicated analysis: whether a plaintiff asserting a claim of discrimination on the basis of handicap under the Rehabilitation Act must be qualified to perform the position for which he was originally hired or whether he need only be qualified for the light-duty positions to which he was reassigned after becoming handicapped. For the reasons that follow, I conclude that plaintiff's acknowledged inability to perform the essential functions of his original position does not

undermine his Rehabilitation Act claims. Accordingly, defendant's motion for partial summary judgment will be denied.

## I.

On October 6, 1980, plaintiff John Dean Taylor was hired as a Rigger Helper at the Philadelphia Naval Shipyard ("PNSY"). Taylor was promoted to the position of a Rigger Worker in 1984. In February 1986, Taylor suffered a back injury while working at the PNSY which, as the parties agree, resulted in his becoming a "handicapped individual" within the meaning of the Rehabilitation Act. There is also no dispute that the injury rendered Taylor unable to perform the essential functions of rigger. No longer qualified to work as a rigger, Taylor was placed on leave status and began to receive federal workers' compensation payments. In October 1986, plaintiff's physician indicated that plaintiff could return to work in a light-duty capacity. Beginning on February 2, 1987, the Navy terminated Taylor's compensation benefits and returned him to work at PNSY in a variety of temporary, light-duty work assignments (such as a driver, a messenger and a receptionist).[1] While doing the light-duty work, Taylor continued to be formally classified as a rigger, although Taylor's physician requested official reclassification given his view that Taylor's back injury was permanent and that he could never again return to work as a rigger. Taylor remained classified as a rigger until he was discharged from PNSY on December 4, 1989, allegedly for having filed false claims with the government. According to Taylor, he has been denied workers' compensation benefits since his termination.

In Count I of his amended complaint, Taylor alleges that PNSY failed to accommodate his disability and otherwise discriminated against him on grounds of that disability in violation of the Rehabilitation Act. Specifically, Taylor contends that although the Navy initially offered him light-duty work within his medical restrictions in order to take him off the compensation rolls, they subsequently transferred him to inappropriate job assignments (such as doing yard work that required heavy lifting) and harassed him in hopes of effecting his resignation so as to make him ineligible for further workers' compensation benefits. Then, having failed to force his resignation, the Navy proceeded to terminate him on pretextual grounds. Taylor seeks reinstatement at PNSY in a permanent position consistent with his medical restriction (if such is available at PNSY); he does not seek reinstatement as a rigger.

In the instant motion, defendant claims that Taylor cannot prevail on Count I, and partial summary judgment should be directed in its favor on this count, because Taylor has acknowledged that he was not qualified to work as a rigger, the position for which he was hired and in which he was continually classified. In response, plaintiff contends that the pertinent question is whether he was "otherwise qualified" to perform the light-duty jobs to which he was assigned after becoming handicapped.[2]

---

1. For a period of approximately seven months in 1987, Taylor was unable to work at all at PNSY because of a reaggravation of his back injury, and he again received workers' compensation benefits during this time.

2. I dealt with this dispute briefly in a September 11, 1992 memorandum granting in part and denying in part defendants' motion for judgment on the pleadings. There I wrote:
   > [D]efendants argue that plaintiff has failed to state a claim under the Rehabilitation Act because he is not an "otherwise qualified" handicapped individual. "An otherwise qualified handicapped person is one who is able to meet all of a program's requirements in spite of his handicap." *Southeastern Community College*

*v. Davis*, 442 U.S. 397, 406[, 99 S.Ct. 2361, 2367, 60 L.Ed.2d 980] (1979). On defendants' view, because plaintiff has failed to allege that he can do the work of a rigger, his Rehabilitation Act claims should be dismissed. However, plaintiff's contention is that he is "otherwise qualified" to perform light duty jobs at the PNSY, and so much he has properly alleged.

Slip op. at 11. Thus, the Navy has essentially represented its former argument in much greater detail for this court's reconsideration. As is explained in the text, I remain convinced that plaintiff's Rehabilitation Act claims do not fail as a matter of law simply due to Taylor's concession that he can no longer do the work of a rigger.

## II.

■ Taylor claims that the Navy discriminated against him based on his handicap in violation of sections 504 and 501 of the Rehabilitation Act. Section 504(a) of the Rehabilitation Act provides in relevant part:

No otherwise qualified individual with handicaps in the United States ... shall, solely by reason of his or her handicap, be ... subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794(a). Section 501, which applies to federal agencies but not to federal grantees, also places a duty to insure that qualified handicapped individuals are not discriminated against in federal employment (as well as a further requirement of affirmative action, *see infra*). *Davis v. United States Postal Serv.*, 675 F.Supp. 225, 231 (M.D.Pa. 1987); *Mackay v. United States Postal Serv.*, 607 F.Supp. 271, 275 (E.D.Pa.1985); *see* 29 C.F.R. § 1613.703 (1992) (regulation adopted under § 501 providing that "an agency shall not discriminate against a qualified physically or mentally handicapped person.").[3]

■ "An otherwise qualified person is one who is able to meet all of a program's requirements in spite of his handicap." *Southeastern Community College v. Davis*, 442 U.S. 397, 406, 99 S.Ct. 2361, 2367, 60 L.Ed.2d 980 (1979). However,

the [*Southeastern Community College*] Court indicated that an individual may be "otherwise qualified" in some instances even though he cannot meet all of a program's requirements. This is the case when the refusal to modify an existing program to accommodate the handicapped individual would be unreasonable, and thereby discriminatory.

*Strathie v. Department of Transp.*, 716 F.2d 227, 230 (3d Cir.1983); *see also Rosiak v. United States Dep't of the Army*, 679 F.Supp. 444, 450 (M.D.Pa.1987), *aff'd without op.*, 845 F.2d 1014 (3d Cir.1988). Therefore, a plaintiff who could perform the essentials of his job if afforded reasonable accommodation is entitled to relief. *Rosiak*, 679 F.Supp. at 450; *Trimble v. Carlin*, 633 F.Supp. 367, 369 (E.D.Pa.1986); *Nelson v. Thornburgh*, 567 F.Supp. 369, 377–80 (E.D.Pa.1983), *aff'd without op.*, 732 F.2d 146 (3d Cir.1984), *cert. denied*, 469 U.S. 1188, 105 S.Ct. 955, 83 L.Ed.2d 962 (1985); *see School Bd. of Nassau County v. Arline*, 480 U.S. 273, 287 n. 17, 107 S.Ct. 1123, 1130 n. 17, 94 L.Ed.2d 307 (1987). As the implementing regulations promulgated by the EEOC make clear, whether a handicapped person can be classified as a "qualified handicapped person" for whom reasonable accommodation must be made requires consideration of the demands of a particular job—i.e., the handicapped employee's ability to "perform the essential functions *of the position in question* without endangering the health and safety of the individual or others...." 29 C.F.R. § 1613.-

---

**3.** Although section 501 specifically addresses employment of the handicapped by federal agencies, and section 504 only generally addresses "any program" conducted by federal agencies without explicitly mentioning *employment* programs, the parties appear to agree, as have many courts, that section 504 applies also to employment programs conducted by the federal government and federal agencies. *See Smith v. United States Postal Serv.*, 742 F.2d 257, 260 (6th Cir.1984); *Prewitt v. United States Postal Serv.*, 662 F.2d 292, 304 (5th. Cir.1981); *Rosiak v. United States Dep't of the Army*, 679 F.Supp. 444, 449 (M.D.Pa.1987), *aff'd without op.*, 845 F.2d 1014 (3d Cir.1988); *Mackay*, 607 F.Supp. at 274 (E.D.Pa.1985); *cf. Consolidated Rail Corp. v. Darrone*, 465 U.S. 624, 632, 104 S.Ct. 1248, 1253, 79 L.Ed.2d 568 (1984) (footnote omitted) ("[I]t is unquestionable that [section 504] was intended to reach employment discrimination."); *but see Boyd v. United States Postal Serv.*, 752 F.2d 410, 413 (9th Cir.1985) ("[S]ection 501 is the exclusive remedy for discrimination in employment by the Postal Service on the basis of handicap."). However, while it might affect exhaustion requirements whether a victim of handicap discrimination in federal employment can sue under section 504 or whether section 501 supplies the exclusive remedy for such claims, there is, for our purposes, no great practical importance to the question. That is because section 501 places a higher standard on an employing federal agency than section 504, *Davis*, 675 F.Supp. at 231; *see infra* note 5. As a result, it is a matter of indifference whether this court analyzes Taylor's claims pursuant to section 504, as supplemented by section 501—as I do in this opinion—or whether this court proceeds with the analysis pursuant to section 501 alone (as the *Davis* court did).

702(f) (1992) (emphasis added). The question for decision today is whether "the position in question" against which to evaluate Taylor's qualifications is the job he performed before his disability—rigger—or whether, to have a valid Rehabilitation Act claim, Taylor must only have been able to perform the essential functions of the light-duty positions to which he was assigned after he injured his back. None of the cases cited by either party directly addresses this issue.

The Navy's position can be concisely summarized. Taylor was hired as a rigger and remained formally classified as a rigger; therefore, rigger was the "position in question," and, even though Taylor might have been qualified to perform other jobs within the Navy and even though he was assigned to perform light-duty work, Taylor was only protected by the Rehabilitation Act insofar he was "otherwise qualified" to be a rigger. As an initial matter, it is important to note that the Navy's stance presupposes that it had no obligation under the Rehabilitation Act to transfer Taylor, once he proved unable to perform his original job, to another suitable, permanent position within the agency or to reclassify him within his medical restrictions. That premise may prove to be true once the surrounding circumstances of this case are fleshed out at trial—as they have not been up to this point—but it cannot be sustained categorically, as would be necessary to direct partial summary judgment in favor of the Navy on the limited factual record before me.

Section 501 of the Rehabilitation Act requires federal agencies such as the Navy to "submit to the [Equal Opportunity] Commission and to the Committee an affirmative action program plan for the hiring, placement, and advancement of individuals with handicaps in such [agency]." 29 U.S.C. § 791(b). It is understood that section 501, in addition to requiring nondiscrimination in federal employment, "creates judicially enforceable rights to affirmative action in federal employment placement and promotion." *Davis v. United States Postal Serv.,* 675 F.Supp. 225, 231 (M.D.Pa.1987); *see also Rosiak,* 679 F.Supp. at 449. Section 501, like section 504, also includes a duty of reasonable accommodation; however section 501's requirement of affirmative action, incumbent only on federal employers, extends beyond the duty of reasonable accommodation incumbent upon federal grantees covered by section 504. *See Southeastern Community College,* 442 U.S. at 410–11, 99 S.Ct. at 2369; *see supra* note 5. Attuned to these twin duties of affirmative action and reasonable accommodation, the EEOC—the agency charged with enforcing section 501—has issued a directive providing that "each agency has a special obligation to provide reasonable accommodation for employees who become disabled *and to identify positions within the agency or in other agencies in which the individuals can function in spite of their disabilities.*" Equal Employment Opportunity Management Directive No. EEO–MD–712, at 9 (Mar. 9, 1983) (emphasis added), *quoted in* Kathryn W. Tate, *The Federal Employer's Duties Under the Rehabilitation Act: Does Reasonable Accommodation or Affirmative Action Include Reassignment?,* 67 Tex.L.Rev. 781, 836 n. 279 (1989); *see also Federal Personnel Manual,* § 1.3(b), ("[E]very reasonable effort should be made to reassign [an employee who is handicapped or who develops handicaps] to duties he or she can perform efficiently and safely . . . before taking action to separate him or her for disability."), *quoted in Coley v. Secretary of the Army,* 689 F.Supp. 519, 522 (D.Md.1987); *Handbook on Reasonable Accommodation,* United States Office of Personnel Management, at 10 ("In cases of current Federal employees who become disabled after employment, agencies have a responsibility to make every effort for their continued utilization. . . . Reassignment: The employee's work experience and education may indicate that he or she can perform satisfactorily in another position. . . . Reassignment need not necessarily be limited to positions of the same grade or series."), *quoted in Rhone v. United States Dep't of the Army,* 665 F.Supp. 734, 743–44 (E.D.Mo.1987). Further, as plaintiff points out, the Federal Workers' Compensation Act and corresponding regulations encourage the employing federal agencies to investigate whether a partially disabled employee can be provided an alternative position within the agency. *See* 20

C.F.R. § 10.123(c) (1992). When such an offer of suitable employment within the employing agency is made, the employee is obligated to return to that employment or else suffer termination of entitlement to workers' compensation. *See* 5 U.S.C. § 8106(c); 20 C.F.R. § 10.124(c), (e).

Discussing the requirement of accommodation under section 504, the Supreme Court has suggested, in dicta, that the Rehabilitation Act—while it does not invariably create a right in a handicapped employee to be reassigned to a light-duty job as a reasonable accommodation [4]—may, in certain limited circumstances, oblige an employer to accommodate a handicapped employee who is no longer qualified to perform his original job by placing him in a different position.

Employers have an affirmative obligation to make a reasonable accommodation for a handicapped employee. Although they are not required to find another job for an employee who is not qualified for the job he or she is doing, *they cannot deny an employee alternative employment opportunities reasonably available under the employer's existing policies.*

*Arline,* 480 U.S. 273, 289, 107 S.Ct. 1123, 1131, 94 L.Ed.2d 307 (1987) (emphasis added).[5] Sensitive to this admonition, some courts have decided that, where other positions are reasonably available under an agency's existing policies, the phrase "position in question" necessarily includes other positions within the agency to which an employee could be reassigned.[6] That the Rehabilita-

---

4. *See, e.g., Bey v. Bolger,* 540 F.Supp. 910, 927 (E.D.Pa.1982).

5. *Arline,* a suit against a county school board in receipt of federal funds, interpreted the duties of federal grantees under section 504, rather than the duties of federal employers who, under section 501, have additional affirmative obligations towards handicapped employees. *See Southeastern Community College,* 442 U.S. at 410, 99 S.Ct. at 2369 (noting that federal employers have an obligation of affirmative action under section 501 that federal grantees do not have under section 504); *Davis,* 675 F.Supp. at 231.

> Because the Court has ... made clear that the federal employer's duty is greater than that of the grantee-employer, courts must set the test for the mandated "reasonable" accommodation under section 501 at a higher level of effort than that required under section 504. In the Court's words, the requisite level of change, adjustment, or modification can be " 'substantial' and might even involve " 'fundamental alteration[s].' "

Tate, *supra,* at 801-2 (quoting *Alexander v. Choate,* 469 U.S. 287, 300 n. 20, 105 S.Ct. 712, 719 n. 20, 83 L.Ed.2d 661 (1985)); *see also* Jeffrey O. Cooper, *Overcoming Barriers to Employment: The Meaning of Reasonable Accommodation and Undue Hardship in the Americans with Disabilities Act,* 139 U.Pa.L.Rev. 1423, 1436 (1991) (footnotes omitted) ("Because section 501 goes beyond ... section 504's ... requirement of nondiscrimination to impose an affirmative action requirement on federal employers, federal employers clearly could be required under section 501 to make substantial modifications in their programs to ensure sufficient participation by individuals with disabilities."). Therefore, it is arguable that a federal employer must do more than simply adhere to its own policies—as called for in *Arline*—and may actually have to rework

its own reassignment policies to maximize the participation of handicapped employers in federal programs, provided that a more liberal reassignment policy would not impose an undue financial or administrative hardship on the employer. *See* Tate, *supra,* at 836 (footnote omitted) ("Because the federal employer has a greater duty of accommodation under the Rehabilitation Act, a court ... could also require an employer to demonstrate that accommodating an employee-plaintiff through reassignment would constitute an undue hardship.").

6. *See Coley,* 689 F.Supp. at 522–23; *Rhone,* 665 F.Supp. at 744–45; *Green. v. United States Postal Serv.,* 47 M.S.P.R. 661, 668 (1991); *cf. Grist v. Frank,* No. Civ.A. 91–5137, 1993 WL 78881, at *1 (D.C.Cir. March 11, 1993) (employer met its duties under Rehabilitation Act by agreeing to assign handicapped employee to new position when such became available); *Smith v. Southeastern Pa. Transp. Auth.,* No. Civ.A. 84–4942, 1987 WL 4935, at *3 (E.D.Pa. June 25, 1987) ("It is not enough for an employer to ascertain that no reasonable accommodation would allow a newly handicapped employee to perform his original job, but it is not necessary for the employer to create a new job, or restructure its employment policies to give the newly handicapped employee a job he can perform."); *Davis,* 675 F.Supp. at 233–35 (while reassignment might be necessary when consistent with employer's existing policies, reassignment not required where Postal Service's collective bargaining arrangement specifically negated any policy of making the positions sought by plaintiff available to him); *but see Guillot v. Garrett,* 970 F.2d 1320, 1327 (4th Cir.1992) (declining to read the *Arline* dictum as requiring the Navy to do anything more than reasonably accommodate the individual within the position that he presently holds; therefore, "an employer is not required as a

tion Act may require an employee to look to a handicapped employee's fitness to perform other jobs than that in which the employee was originally hired casts doubt on the limited, retrospective definition of the phrase "position in question" urged by the Navy.

In its pretrial memorandum, the Navy described its reassignment procedure at PNSY as follows:

> It was the practice at PNSY to make reasonable accommodations for employees with light-duty work restrictions by referring the employees to shops for temporary assignments. PNSY made no permanent light-duty assignments.

Defendants' Pretrial Memorandum at 4.[7] Still, there is no factual basis in the record demonstrating (1) that this is the Navy's policy with respect to accommodation of handicapped workers (as alleged); (2) why permanent light-duty assignments are resisted; (3) whether there were any permanent positions at the PNSY consistent with Taylor's medical restrictions during the years in question; and (4) whether a different policy with respect to permanent light-duty assignments would impose an undue hardship on the Navy.[8] Cf. Strathie, 716 F.2d at 231 ("A handicapped individual who cannot meet all of a program's requirements is not otherwise qualified if there is a factual basis in the record reasonably demonstrating that accommodating that individual would require either a modification of the essential nature of the program, or impose an undue burden on the recipient of federal funds."). Therefore, insofar as the Navy's motion for partial summary judgment depends, in the first instance, on its claim that permanent light-duty assignments were not reasonably available under its existing policies, I cannot divine enough about the Navy's policies from the limited record before me to make a ruling at this stage as to whether the Navy's refusal to reclassify Taylor was consistent with the Rehabilitation Act. For this reason alone, partial summary judgment in favor of the Navy would be inappropriate.

However, my decision to deny summary judgment does not hinge on the present uncertainty as to whether the Navy had an obligation to reassign Taylor to a permanent light-duty position. Even if the phrase "position in question" does not include other positions within the agency to which the plaintiff aspires for purposes of a reassignment claim and the Navy, accordingly, had no duty to reassign Taylor to a light-duty position, certainly when an employee *has* been offered light-duty work—work that he must accept in order to maintain workers' compensation eligibility—and that employee challenges the conditions of, and the reasons for his separation from, such light-duty work, the relevant inquiry must be his qualifications to perform that work in which he was engaged when the alleged discrimination occurs. No case cited by defendant is to the contrary.

The cases cited by defendants stand collectively for the proposition that an employee is properly fired if that employee cannot perform the essential features of his job. However, the Navy has never suggested that Taylor was discharged because of his inability to perform the job of rigger or even, more broadly, that his qualifications as a rigger had anything whatsoever to do with his discharge.[9] Indeed, the Navy agreed to place

matter of reasonable accommodation to transfer or reassign an employee who is not otherwise qualified for the position he then holds"); *Montgomery v. Frank*, 796 F.Supp. 1062, 1069 (E.D.Mich.1992) (citation omitted) (" '[T]he defendant 'is under no obligation to transfer a handicapped employee from the job in which he is employed to some other position in order to provide him with work which he can perform.' "); *Walders v. Garrett*, 765 F.Supp. 303, 312 (E.D.Va.1991) (same), *aff'd without op.*, 956 F.2d 1163 (4th Cir.1992); *Black v. Frank*, 730 F.Supp. 1087, 1091 (S.D.Ala.1990) (same).

7. This pretrial memorandum was submitted also on behalf of defendant Robert C. Brown, who is not named as a defendant in Count I (containing the Rehabilitation Act claims at issue today).

8. *See supra* note 5, suggesting that a federal employer might have to demonstrate that a reassignment policy more accommodating to handicapped employees would impose an undue hardship on the employer.

9. For instance, Taylor's qualifications as a rigger might become relevant were the Navy to argue that it had originally believed that Taylor's disability was temporary and that only when Taylor proved permanently unable to perform the job of rigger did they release him. Although I do not perceive the Navy to be making this argument, it

Taylor in light-duty assignments despite his lack of qualification as a rigger—or, one might even say, *because of* his lack of qualifications as a rigger. Still, the Navy submits that Taylor has no protections under the Rehabilitation Act because he is not "otherwise qualified" to be a rigger. Such a construction of the Rehabilitation Act and its regulations—in addition to being undocumented in the case law—would make nonsense out of the Act. If one were to accept the Navy's rigid definition of the "position in question," an employer who chose to reassign to light-duty work an employee who had become unable to perform his original job would have an unsettling "carte blanche" power over that employee. During the course of the handicapped worker's light-duty employment, the employer would be able, without any sanction under the Rehabilitation Act, to harass that worker because of his handicap, fail reasonably to accommodate that worker's disability, or otherwise engage in handicap-based discrimination simply because the employee was not "qualified" for a position that had nothing to do with his current work.[10] This result is particularly egregious where, if plaintiff's contentions are to be believed, PNSY's temporary light-duty placement system is itself designed to harm disabled workers, and disabled workers such as Taylor, who are forced to accept offers of "suitable" employment in order to remain eligible for workers' compensation benefits, return to PNSY to encounter inadequate accommodation of their disabilities within their "light-duty" assignments and a hostile work environment.[11] In short, to allow an employ-

would go something like the following: (1) Taylor's light-duty assignments were just temporary placements until such time as he might become fit again to become a rigger (not a restructure of the rigger position or a permanent light-duty placement), and (2) PNSY discharged Taylor when it became clear that he could not work again as a rigger, because PNSY has no permanent light-duty placements and is not required to create a new position. However, even were this the Navy's position, it would still be inappropriate to award summary judgment on the basis of this argument because it poses an essentially factual question: what position Taylor was in when he was discharged (i.e. was he a "rigger" doing temporary odd jobs, or had he been essentially given a new light-duty position?). As illustrated in *Dancy v. Kline*, 639 F.Supp. 1076 (N.D.Ill.1986), the official title conferred upon Taylor's position by the Navy would not itself resolve this question. In *Dancy*, the plaintiff, Dancy, was employed for many years as a Federal Protective Officer ("FPO") in the General Services Administration. After Dancy began to experience back pains, he was placed in light-duty status until, three years later, he was discharged from his light-duty job. Defendants argued that plaintiff was allowed to do light-duty tasks because they thought his disability was temporary and that, when his disability proved permanent, they terminated him because there was no appropriate, alternative position available. Dancy, who conceded that he could not perform the essential functions of a FPO, claimed that his discharge from the light-duty job violated the Rehabilitation Act. Defendants sought summary judgment, arguing that the "position in question" was limited to that of FPO and, therefore, Dancy was not a qualified handicapped person. Although Dancy did not dispute that he had always remained classified as a FPO, the court determined that summary judgment was inappropriate because it could not "make a determination regarding what plaintiff's 'position in question' is because there are too many factual determinations concerning the 'light duty' job." *Id.* at 1079.

> [B]ecause this is a case stemming from a discharge 'the position in question' will be the job from which plaintiff was dismissed. The issue at trial will be whether plaintiff's position at the time of his termination was that of a FPO or the 'light duty' clerical job.

*Id.*

10. Similarly, because Taylor seeks reinstatement in a permanent light-duty position—not reinstatement as a rigger—it is difficult to see why Taylor's qualifications to perform as a rigger have anything to do with the work which he seeks to continue performing in the future. *Cf. Strathie*, 716 F.2d at 230 (emphasis added) (holding that in order to make out a Rehabilitation Act claim, a plaintiff must prove "that he is 'otherwise qualified' *for the position sought*").

11. Title VII concepts are often applied in deciding section 794 cases, *see, e.g., Prewitt v. United States Postal Serv.*, 662 F.2d 292 (5th. Cir.1981), and harassment which is "sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment' " is actionable under Title VII. *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 67, 106 S.Ct. 2399, 2405, 91 L.Ed.2d 49 (1986) (citation omitted). Therefore, it is strongly arguable—although I need not decide for purposes of resolving this motion—that disability-based harassment responsible for creating an abusive working environment is itself actionable under the Rehabilitation Act, even if it is not accompanied by termination from the job in question. *See, e.g., Pendleton v. Jefferson Local Sch. Dist. Bd. Of Educ.*, 958 F.2d 372 (6th Cir.1992); *James v. Frank*, 772 F.Supp. 984, 990 (S.D.Ohio 1991).

**940**

er to operate outside the Rehabilitation Act simply due to the formal job title that the employer has chosen to confer on a handicapped employee contradicts not only common sense, but also the basic promise set forth in the regulations implementing the Rehabilitation Act that "the federal government shall become a model employer of handicapped individuals." 29 C.F.R. § 1613.-703 (1992).

### III.

### Conclusion

The phrase "the position in question" should not be defined so as to constrain the bounds of a federal employer's obligation to make reasonable accommodations in the workplace for its disabled employees, but rather should be interpreted consistently with that duty of reasonable accommodation to ensure that an employer need not retain a worker in a position whose basic functions that worker is unqualified to perform. Therefore, Taylor's lack of qualifications to perform the job of rigger does not prevent him from claiming that the Navy failed to make reasonable accommodations for his disability when he was assigned to do light-duty work and that the Navy separated him from his light-duty employment because of that disability. Accordingly, defendant's motion for partial summary judgment will be denied.